UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SHERMAN HENRY,                                          **FIRST AMENDED COMPLAINT**

                                                                                   **15 CV 909 (GBD)**
                                                                                   **ECF Case**

                 Plaintiff,
   vs.

The CITY OF NEW YORK, POLICE OFFICERS
JEFFREY SANJUAN, Shield 11878,
GREGORY SANTANA, Shield 945398,
MALCIAL TUERO, Shield 17578,
SERGEANTS JOSE RAMOS, Shield 1917,
and DANIEL GAGLIARDI, Shield 4438,             **JURY TRIAL DEMANDED**
in their individual and official capacities,

                          Defendants.
-----------------------------------------------------------x

Plaintiff Sherman Henry, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the arrest and prosecution of Sherman Henry ("Plaintiff") on the false and fabricated grounds that he drove his motorcycle recklessly. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest and imprisonment, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks

1

compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.  Plaintiff Sherman Henry is an African-American male, with no criminal record, and a United States citizen.

7.  The individually named defendants Police Officer Jeffrey Sanjuan (Shield # 11878) ("PO Sanjuan"), Police Officer Gregory Santana (Shield # 945398) ("PO

Santana"), Police Officer Malcial Tuero (Shield # 17578) ("PO Tuero"), Sergeant Jose Ramos (Shield # 1917) ("Sgt. Ramos"), and Sergeant Daniel Gagliardi (Shield # 4438) ("Sgt. Gagliardi") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 30th Precinct.

9. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI017784. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12. The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on July 23, 2014.

13. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

**STATEMENT OF FACTS**

14. On April 3, 2014, around 6:00 PM, Plaintiff was driving his motorcycle, a Suzuki DR-Z400 ("the Motorcycle"), having finished work at Citi Field in Queens and heading toward his father's Laundromat on 157th Street and Amsterdam Avenue in Manhattan.

15. Plaintiff was licensed to drive the Motorcycle, and he had been complying with all traffic laws, driving safely and conscientiously along a route he had taken many times before. That route entailed going along the I-278 Expressway, Triboro Bridge, Major Deegan Expressway, and a bridge at 145th Street linking the Bronx to upper Manhattan.

16. After crossing the bridge into Manhattan, Plaintiff drove west on 145th Street and turned right on Saint Nicholas Place ("St. Nicholas"), heading north. Around 6:10 PM, Plaintiff stopped at the red light at the intersection of St. Nicholas and 150th Street, and waited lawfully for the light to turn green.

17. Before the light turned green, an unmarked NYPD vehicle drove along 150th Street and stopped directly in front of Plaintiff. Inside the vehicle were PO Sanjuan, PO Santana, and PO Tuero.

18. After stopping Plaintiff, PO Santana, wearing plain clothes, got out of the car and walked to the Motorcycle, where he took the keys out of the ignition and ordered Plaintiff to "Get off the bike." Although PO Santana did not state the basis for his stop, Plaintiff complied with the order and got off the Motorcycle.

19. When Plaintiff asked why he was being stopped, PO Santana said that Plaintiff had been seen driving on Broadway with a pack of dirt bikers who were doing "wheelies," that is, driving with the front tire in the air.

20. Plaintiff denied doing "wheelies" and being on Broadway, explaining that he had been driving from work, still wearing his work uniform. Plaintiff had just come across 145th Street from the east side, and Broadway was three blocks west of St. Nicholas.

21. Despite Plaintiff's innocence and plausible explanations denying all wrongdoing, PO Santana and PO Sanjuan decided to arrest Plaintiff, saying that their Captain or Sergeant had seen a pack of bikers, and baselessly assuming that Plaintiff belonged to that group.

22. Plaintiff was handcuffed behind his back, placed in the police vehicle, and taken to the 30th Precinct ("the Precinct").

23. PO Santana drove the Motorcycle to the Precinct and vouchered it as "arrest evidence" (Invoice #1000476919) even though it was not, in fact, evidence of any wrongdoing.

24. At the Precinct, PO Santana and PO Sanjuan presented Plaintiff to Sgt. Ramos or Sgt. Gagliardi, who said that Plaintiff was not part of the group of bikers he had observed, but still ordered the two officers to keep Plaintiff under arrest and pursue charges against him, as if scapegoating Plaintiff for the sins of other bikers.

25. At the Precinct, PO Sanjuan, PO Santana, Sgt. Ramos, and Sgt. Gagliardi concocted bogus charges against Plaintiff, not only for the "wheelies" down Broadway but for driving without a license for the Motorcycle.

26. In fact, Plaintiff was licensed to drive both a car and a motorcycle in New York. Specifically, Plaintiff possessed a valid driver's license, a valid motorcycle learner's permit, and a printed DMV receipt ("the Receipt") wrapped around his driver's license which served (according to DMV rules) as Plaintiff's temporary license giving him the unrestricted privilege to drive a motorcycle.

27. At the Precinct, Plaintiff was searched, fingerprinted, photographed, and processed. His property was seized, and he waited in the holding cells for about four hours.

28. Later Plaintiff was transported to Central Booking in lower Manhattan, where he remained until the late afternoon of April 4, 2014.

29. On April 4, 2014, around 4:00 PM, Plaintiff was arraigned in New York County Criminal Court, on Docket Number 2014NY026414. He was charged with three offenses: Reckless Endangerment in the Second Degree, in violation of New York Penal Law Section 120.20; Reckless Driving, in violation of New York Vehicle and Traffic Law 1212; and Unlicensed Class of Driver, in violation of Vehicle and Traffic Law 509(2).

30. The Criminal Court Complaint ("the Complaint") contained factual allegations provided by PO Sanjuan, who wrote and signed, under a warning against making false statements, the following false statement: "I observed the defendant [Plaintiff], who was operating a motorcycle…drive through a red light at the intersection of 149th Street and Broadway…. I then observed the defendant perform a motorcycle trick known as a "wheelie" in which he rode solely on the rear wheel of the motorcycle for approximately an entire block. I then observed the defendant swerve in and out of

traffic and come close to striking other motorists. I then observed the defendant drive through another red light at the intersection at 147th Street and Broadway and come within approximately 3 feet of striking pedestrians who were crossing the street. I observed that the defendant could only produce a motorcycle learner's permit and not a motorcycle license."

31. In the Complaint, PO Sanjuan also stated that Plaintiff committed the three offenses on "April 3, 2014 at about 6:12 PM, at Saint Nicholas Avenue & West 150 Street in the County and State of New York," which is near where Plaintiff was arrested (Saint Nicholas Place) and separated by two avenues (Amsterdam and Convent) from Broadway.

32. Thus, the Complaint states two entirely separate locations as the scene of the crime. In writing up the Complaint, PO Sanjuan tried fusing his recollection of arresting Plaintiff on a motorcycle on St. Nicholas with Sgt. Doe's statement about motorcyclists popping wheelies down Broadway; hence the confused and illogical Complaint.

33. At Plaintiff's arraignment, based on the individual defendants' fabrications, the New York County District Attorney requested $1,500 bail and recommended thirty days jail on a plea to the charge.

34. Plaintiff pleaded "not guilty," and was released upon his own recognizance, ending over twenty hours of incarceration. Plaintiff was ordered to return to New York County Criminal Court, Part A, on May 28, 2014.

35. Plaintiff returned to Criminal Court on five occasions before his case was finally dismissed on December 2, 2014, pursuant to New York Criminal Procedure Law Section 30.30, due to the District Attorney's failure to prosecute.

36. Because of the seizure of his Motorcycle and its improper label as "arrest evidence," Plaintiff was deprived of his primary means of transportation to and from work. When, over a month later, he was allowed to get back the Motorcycle from the pound, Plaintiff discovered that it had been maltreated, with the handlebars and brake levers bent, and he had to repair it.

37. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

38. There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

39. The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

40. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

41. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

42. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

43. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

44. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

45. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

46. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

47.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

48.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### False Arrest Under Section 1983

49.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

50.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

51.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

52.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

53.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

54.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

55. Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the D.A..

56. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

57. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

58. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

59. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

60. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Municipal Liability Under Section 1983

61. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

62. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to

11

train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

63.   As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

### FIRST CLAIM

**False Imprisonment under N.Y. State Law**

64.   Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

65.   The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

66.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

**Malicious Prosecution Under N.Y. State Law**

67.   Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68.   As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

69. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

70. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

71. Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

72. Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

73. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

74. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

75. Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

76. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

77. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

13

78. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

79. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Respondeat Superior Under N.Y. State Law

80. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

81. Defendant City is the employer of the individual defendants.

82. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

83. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a. An order awarding compensatory damages for Plaintiff Sherman Henry in an amount to be determined at trial;

    b. An order awarding punitive damages in an amount to be determined at trial;

      c.      A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

      d.      Such other and further relief as this Court may deem appropriate.

DATED:    May 29, 2015                    _____s/_____
                New York, New York        CYRUS JOUBIN, ESQ.
                                                      88 Pine St., 14th Floor
                                                      New York, NY 10005
                                                      (703) 851-2467
                                                      joubinlaw@gmail.com
                                                      Attorney for Sherman Henry